United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. The case for today is 2-1-2-0-0-0-8 Enri Ultra Petroleum Corporation v. Ad Hoc Committee. Mr. Clement, you may proceed. Good morning, your honors, and may it please the court. This court has already recognized that section 502b2 of the bankruptcy code disallows claims for unmatured interest filed against solvent debtors. That provision plainly applies equally to solvent debtors and where it applies, it is the code and not the debtor's plan that impairs the creditor's contractual rights. That prior holding leaves just two questions here. Whether the make whole payment under the MNPA is a claim for the economic equivalent of unmatured interest or otherwise disallowed by section 502b and what interest rate applies on the allowed claims such that the class holding them is unimpaired. The answers to those questions are straightforward. The make whole payment is and the applicable interest rate on the allowed claims is the legal rate, not the very contractual rates expressly disallowed by section 502b2. As to the first issue, the make whole payment plainly reflects the economic equivalent of unmatured interest. In fact, the make whole payment formula isolates future interest payments due by applying a discount rate to the future payments due and those future payments are both interest in principle and then it subtracts out the called principle, yielding the amount of unmatured interest due discounted to net present value. If all the make whole provision did was isolate the interest payments that are due in the future and subtract out the called principle, even the appellees would, I think, concede that the make whole payment was simply for the economic equivalent of unmatured interest. But simply discounting the future payments to present value does not change their essential character or avoid disallowance. If anything... Do you say to the argument that it's just enforceable liquidated damages under our case law? So your honor, I would say that that response relies on a false dichotomy. Something can be a liquidated damages provision, but if the amount of the liquidated damages is the amount of future unmatured interest due, I think even appellees would concede that that kind of liquidated damages provision is simply the economic equivalent of unmatured interest. And the only difference here is that the formula includes a net present value calculation, but that can't make a material difference. I mean, if you had a formula that said you get the amount of future unmatured interest, but we subtract $10, you would still be getting the economic equivalent of unmatured interest. And so simply taking the unmatured interest and applying some calculation doesn't change its essential character as unmatured that unlike some of appellee's other arguments, their argument to try to save the make whole payment and say that it's not the economic equivalent of unmatured interest does not turn on whether the debtor is solvent or insult. So if they have their way, they would be creating a substantial loophole, if you will, that would allow certain sophisticated unsecured creditors alone to get substantial amounts of future unmatured interest as part of their allowed claim. And so, like I said, I'll turn in a second to their arguments that turn on whether the debtor is solvent or insolvent. But this first basic threshold question of whether the make whole payment is the economic equivalent of unmatured interest does not turn on the nature of the debtor and whether they're solvent at the beginning or the end of the bankruptcy proceeding. So the second question that was left unresolved by the first decision in this case, of course, is the question of what interest rate must be applied to the claims of the appellees in order to render those claims, the allowed amount of those claims, unimpaired. And we think although it requires a little bit more complicated analysis than the first question, ultimately the code does provide a clear answer. And the answer is that those claims, in order to be classified as unimpaired, need to get interest at the legal rate. And we think the Ninth Circuit is exactly right that at the legal rate means the federal judgment rate. It doesn't mean the contractual rate that would be the precise contractual rate that is disallowed by 502b2. And I think it's critically important for these purposes to understand that the code gives you an entitlement to interest on the allowed claims, but it does not in any way allow you to get recovery for contractual interest for unmatured interest as part of the claim itself. What do you say to the argument that limiting the unimpaired appellees to post-petition interest at federal judgment rate makes them worse off than if they were impaired because they didn't have their creditor's vote? Well, I have two basic arguments in response to that, Your Honor. First is we think sort of saying we lost our vote and somehow we're worse off really runs completely contrary to the basic judgment of the code. The code says you're either impaired or you're impaired. So the code itself recognizes that if you're impaired, you're worse off. And so in order to protect yourself, you get a vote. But if you're unimpaired, that doesn't make you worse off. And essentially what the other side's trying to do is re-litigate the panel's first decision because they're basically saying, oh, we're worse off because even though we're technically unimpaired, we don't get the benefit of our contractual interest rate that we would get outside of bankruptcy. But of course, the reason they don't get that isn't because of anything having to do with the interest rates. It has everything to do with 502b2 and the fact that it says, look, you don't get your contractual claim for unmatured future interest. And so then in trying to figure out what's equitable in this case with respect to the interest on the allowed claims, at that point, it seems the answer is pretty clear, which is the unimpaired claims class ought to be treated the same way as the impaired class. And my friends seem to concede that as to an impaired class, you go to the waterfall provisions of Chapter 7 by cross reference and you get to the legal rate. And so our analysis, I think, is pretty straightforward, which is essentially in order to make sure that the claims remain unimpaired, they need to get the same treatment they would get if those claims were impaired, which is the legal rate. Mr. Clement, I don't understand. So post-petition interest, as you point out in page 39 of your blue brief, is by definition unmatured at the date of the petition. So why is it not barred entirely by 502b2 for all of the same reasons you have for the make whole amount? So I think it would be barred if you conceptualized it as simply contractual interest. And I think the basic observation that as a general matter, 502b2 puts all unmatured interest, all post-petition interest, therefore, which is classically unmatured interest off limits, that then essentially shifts the burden to the other side to come up with some affirmative authorization in the code for the post-petition interest. And as I think you understand, the authorization for that is pretty straightforward when it comes to creditors of a solvent debtor in chapter seven. And it's still fairly straightforward when it comes to chapter 11 and impaired classes. And so the only place there's a seeming gap is with respect to a class of unimpaired creditors in chapter 11. But I think actually the gap, although it seems like there's a gap, there isn't one because you still have to answer the question, is that class of seemingly unimpaired creditors truly unimpaired? And the way you assure that they are in fact unimpaired is you give them the same entitlement to interest as the impaired classes. And to get the answer to that, you of course look to the cross-reference to chapter seven. So I actually think there's not a gap. Well, so maybe, except as you pointed out sort there's clearly not a provision expressly for unimpaired chapter 11 creditors. And so I guess what I wonder is why don't we fall back on, whether it's the solvent debtor exception or general principles of equity or one of these other, where the code doesn't specifically say, this is what we do for this group of creditors. Why don't we just fall back on one of those other propositions that your friends on the other side urge? Well, I think there's a couple of reasons for that. Obviously one reason is we don't think there is that gap. The second reason would be that you really can't fall back on a pre-code practice because the one thing that's crystal clear is the pre-code practice doesn't survive the code. Because the pre-code practice was not to give some amount of interest to solvent debtors on the amount of their allowed claims. The pre-code practice was to essentially with respect to a solvent debtor to essentially allow the future unmatured interest as part of the claim itself. And we know that practice is foreclosed. That practice is clearly foreclosed by 502b2. It's also clearly foreclosed by the waterfall provision in 726a. Because if you accept our basic argument that the legal rate is not the contractual rate. But to what extent, let me ask you, to what extent are we going, should be influenced by the fact that the previous panel held that the solvent debtor doctrine could be applied and could be used as a tool in resolving this case? Well, I think as I read the prior panel's decision, it simply did not foreclose that issue one way or another. And I think, I mean, you know, particularly in light of the withdrawn opinion, which seemed to very much, you know, accept our view of the solvent debtor exception. I viewed the kind of amended opinion to sort of put us back to kind of a jump ball as to whether the solvent debtor exception applies. So I don't think that there's any law of the case here that the solvent debtor exception definitely applies. I would also say that... survives the bankruptcy code. Again, I don't see it there. I think I simply read that opinion as leaving open the question of whether it survives and in what form. And, you know, just to compare the briefing in this round of the appeal with the briefing in the last round of appeal, the parties have gotten to a much greater degree of granularity on these questions. And I think it is quite fair to say that we have, you know, dare I say, a compelling argument that whatever else is true, the solvent debtor exception doesn't survive the code in the way that it existed under the act. And so that puts the other side, I think, in a very difficult position. All right. May I ask you if we should decide that the solvent debtor doctrine survives and should be applied in this case, what would be the result? Well, if you were to apply that, I think there would be a couple of questions there. I mean, I think, and we obviously started down this path with Judge Oldham's question, and I think Judge Oldham's question did suggest that there is a stronger case for the solvent debtor exception with respect to the interest rate, as opposed to in its form that would just ignore the fact that the make whole payment is for unmatured future interest. So I'm going to assume that even if the solvent debtor applies, then we're only talking about the interest issue, not the make whole issue. And then with respect to even the interest issue, I would say that the right result would not be to give the other side the default interest rate, because they were and then the default triggered the default rate. And of course, that higher default rate is only triggered by bankruptcy, ought to be disregarded as a matter of the ifso facto clause. So the most that they should get under that theory is the original contractual interest rate, not the default interest rate. But I would, and I hope I've been responsive to your question, I would like to end my response by trying to resist the premise and say, but once you're talking about awarding the interest pursuant to the contract, that really gets you back to 502b2. Because it seems to me like in light of 502b2, the one thing that we shouldn't be awarding interest based on is the very contract that we've essentially disregarded under 502b2. And of course, the legal rate avoids that conundrum. It also provides equity in the sense that you may have some creditors with an allowed claim, where there's no external interest rate at all, because there's not a contractual interest rate. It's not a state court judgment or something. And the legal rate gives equity to all of those that have an allowed claim, but didn't get them paid until the end of the bankruptcy process. I see that my time has expired. I'd like to reserve the remainder of my time for rebuttal if that's possible. I'd like to give each side two more minutes, every person two more minutes, because I have a couple more questions. How do you avoid the Supreme Court's instructions in Cohen de la Cruz that we are not to interpret the bankruptcy code to advocate prior bankruptcy unless Congress does so in an unmistakably clear terms? And it applied despite Section 63 of the Congress. So how do we know that Congress did intend to abrogate by merely recodifying Section 63? So, Your Honor, I think there's two questions embedded there, and I'd like to answer both of them. I mean, first, I think you got to read all the Supreme Court's bankruptcy cases. And Cohen does not stand alone. It also stands in conjunction with the In re Ron Peer case. And I think what you see from those decisions is you don't get into this kind of very odd mode of statutory construction where you look to the legislative history and not the text, unless the code provisions themselves are not clear. And here, I think the code provisions are very clear that they reject the precode version of the solvent debtor exception. The second thing is you reference Section 63 of the Bankruptcy Act of 1898, and I do think there is an important textual difference between Section 63 and Section 502b2. My friends on the other side want to lump them together and say, well, they both just say you can't get post-petition interest. But they're actually, I think, critically different because Section 63 is permissive. It says you're allowed the amount of interest, essentially, that's not unmatured. You're allowed interest up to the point of the filing. But it doesn't expressly prohibit the collection of unmatured interest. 502b2 flips that around, and all of 502b is telling you things that you can't recover as part of an allowed claim. And the thing you can't recover as part of an allowed claim is unmatured interest. And so I think that's the kind of clear text that, in a case like Ron Payer, the Supreme Court would apply. Thank you, Mr. Clement. You saved time for rebuttal. Thank you. Mr. Robbins. Thank you, Your Honor, and may it please the Court. I'm Larry Robbins for the Ad Hoc Committee. First off, I want to thank the Court for agreeing to hear this case remotely this morning. And subject to the Court's questions, I propose to focus on the solvent debtor exception and its implications for post-petition interest. And note-holders' counsel, Mr. Willett, will principally address the make-all. At its essence, the question presented this morning is this. When a solvent debtor has nearly $400 million in surplus in its estate, must it pay that surplus to the creditors it promised it to, or may it instead give the $400 million to its equity holders, who are supposed to sit at the bottom of the pyramid? More than 100 years ago, this Court in Johnson v. Norris gave us the answer when it said, "...bankrupts should pay their debts in full, principal and interest to the time of payment whenever the assets of their estates are sufficient." Mr. Robbins, can you point to any authority to support the proposition that the traditional solvent debtor exception covers interest on a claim, like the default rate interest at issue here? Because we're trying to figure out what is appropriate if we did go back to solvent debtor rules. And I'm not sure that the history supports it. Can you help us? Yes, I think I can, Judge O'Rourke. There are at least five cases by my reading that show that the precode solvent debtor exception extended to post-petition interest on claims, not merely as part of a claim. And I will cite these five cases, all of which I believe are in the briefs. Brown v. Leo from the Second Circuit in 1929. The debenture holder's case from the First Circuit in 1982, which is significant because it was cited by Congress in a House report that both sides cite to the Court this morning as an illustration of what it means to be equitable. Judge Posner's decision for the Seventh Circuit in Chicago-Milwaukee-St. Paul Railroad. This Court's decision in Johnson v. Norris in 1911. Does this all just break down, though, to what is equitable, which is what we could do anyway? Does it collapse into just equity? That's what the bankruptcy court had the power to do anyway. Yes, I think there is a strong suggestion of that, Judge Elrod, in Johnson v. Norris. But I was responding to Your Honor's original question, which is, did the solvent debtor exception extend both to post-petition interests on claims and as part of the claim? And the answer to that is manifestly yes. The fifth in the series of cases I wanted to draw Your Honor's attention to is the Second Circuit's opinion in Ruskin v. Griffiths from 1959. If it does collapse into equity, it doesn't appear that that's what the Court did in this case. Well, I would not suggest that it is merely a question of equity at all, Your Honor, although it is plainly equitable to honor your contracts rather than to give money to your equity holders. That's a principle that is about as old as the Bankruptcy Code and the Bankruptcy Act. But I would say, Your Honor, that it is in fact tethered to Section 1124, Sub 1, as it was suggested, although not ruled on, by the panel that remanded the case to Judge Isker. The panel, after all, said that it is possible that a bankruptcy court's equitable power to enforce the solvent debtor exception is moored in 11 U.S.C. 1124's command that a plan leave unaltered equitable rights. And we think that that is all the textual mooring you need, if you will, to support the proposition that you honor your contracts and you don't give the money to the this doesn't just run headlong into 502b2. If the contract said, let's imagine you wrote a contract as part of your note agreement with ULTRA that said, we expect if you go into bankruptcy that you're going to pay us unmatured interest, you would agree that it's barred by 502b2. So it all just comes back to how much of this constitutes unmatured interest within the text of the statute that Congress passed, irrespective of the equity that may have existed prior or may survive it. Well, I'm not, well, I want to both beg the premise and also answer the question, Judge Oldham. The first is I would not concede that if this contract said unmatured interest, it would in fact be barred by 502b2 for precisely the reason this court gave in Johnson against Norris. Johnson against Norris dealt with the construction of section 63. 502b2, despite what Clement said a few minutes ago, is nothing but the recodification of section 63. Just as the solvent debtor exception co-existed, indeed was an exception to section 63, so too is it an exception to 502b2 for precisely the same reasons. As this, as the Supreme Court made just last term in Minerva Surgical and actually made clear in the line of cases that are quite robust, starting with Midlantic Bank, when Congress simply reenacts a provision, it carries the old soil with it. Can you quote to me the language in the 1898 Act that said creditors do not get unmatured interest? Let me get the language in front of me, Your Honor. So it comes from section 63a, and which, by the way, Johnson against Norris construed as saying ordinarily you wouldn't be able to get post-petition interest under this statute. So it read it to mean precisely what Mr. Clement says 502b2 means. That was the holding in Johnson against Norris. I'm curious about the text of the statute because they reenacted the text. Yes. My reading of it, it doesn't look anything like 502b2, so I'm curious how you're tracing the text from 1898 to 1980. Well, let me find it. Founded upon provable debts reduced to judgments after the filing of the petition and before consideration of the bankruptcy application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments. That last clause. That allows you the matured interest. So I'm with you so far. So where's the part that bars the unmatured interest? The language that says less interest accrued after the filing of the petition. You must subtract out. You must subtract out. These are the words. Interest accrued after the filing of the petition. That is precisely, it's not obviously the words unmatured interest, but that's what matured interest means. It means the interest that runs, that you don't collect after the filing of the petition. That's how Johnson against Norris understood the language. And there were other cases in this line that construe it as well. So we think, and I realize my time is dwindling, I want to make a couple of additional points. The first is 1124 sub one, we believe captures the basic equitable principle that Judge Isger replied in this case. The second, however, goes back to Judge Elrod's question. And I noticed that I was listening to Mr. Clement who said, Cone does not stand alone. And I could not agree more. It's one of a long, long line of cases, including as recently as 2018 and 2019, that say from the Supreme Court, that unless there is the clearest evidence that Congress is seeking to abandon a precode doctrine, the precode doctrine survives, full stop. And here, this case, if Midlantic was correctly decided, and we have to take it as it is, it's a Supreme Court precedent, this case is a fortiori, because we had a precursor statute that admitted of the same exception, Congress reenacted it. Now, I haven't heard yet today, an argument from Mr. Clement, but he makes it in his brief, Ultra makes it in the brief, not just about 502B2, but also about 726A5. And I take the argument to be that 726A5 essentially occupies the field. It shows that Congress was willing to adopt the precode doctrine. That, I submit, is simply not true. We know that 726A5 doesn't occupy the field, first and foremost, because as Judge Elrod was referring to earlier, there's a carve out from 726A5 right in the code. It says that if you're an impaired creditor, in a Chapter 11 case, you get not less than the legal rate, which we contend, by the way, does not mean the federal judgment rate for reasons that are explained in the note holder's brief. But the point is, 726 could not possibly be the kind of clear evidence that Midlantic requires in order to interest. I see I have very little time left, and I can't recall now, Judge Elrod, if that includes the two minutes you were kind enough to add, or it doesn't. But since my time is dwindling, I want to make just one point about the make whole. But it's the most important point I think I can make. And that is, it cannot possibly be the economic equivalent of unmatured and I call the court's attention to the chart we provide in our brief at page 40. If you take a look at it, you'll see that the make whole is entirely contingent. It is precisely because it is compensation for the anticipated damages of having to relend in a down interest rate market. And the discount rate therefore varies all over the map. Mr. Robbins, you need to wrap it up. Okay, well, the simple point is, the make whole is entirely contingent, it could go from zero to almost as much as the unmatured interest. And if I think it follows as the day that follows the night, that a chance at 100 at a make whole at a make at a unmatured interest recovery cannot possibly be the economic equivalent of unmatured interest, which after all is certain not contingent. And that I think exhausts my time and I appreciate the court's indulgence. Thank you. Thank you, Mr. Willett. Good morning, your honors and may it please the court. Let me pick up the baton and begin where Mr. Robbins left off. And I hope to cover two essential points on the make whole this morning. The first being contingency, it's contingent nature. The second being your precedence in this court. So as Mr. Robbins was saying, and as he illustrates with real world examples from recent history at page 40 of his brief, the make whole formula is such that it may result in no damage at all. And that's in part because Mr. Clement elided what that complicated mathematics actually does. It discounts all of the future payments, which includes the principal. And when you discount an obligation to repay principal many years in the future to present dollars, it's a much lesser number. So the effect of discounting the principal always works in favor of the borrower. And only when that aspect of the formula, when compared to the effect of discounting interest against a changed rate market, only when that results in actual damage to the lender does this kick in and result in a figure due. Interest on the other hand, defined in Texas, in New York, everywhere, is a fixed charge that accrues inexorably over time on borrowed money. A thing that may result in zero cannot be economically equivalent to a thing that inexorably results in positive return. And I would point out a couple of things. My was that the instrument you considered in that case was not the equivalent of interest. We cited the thrifty oil case, which is quite similar to our situation. You had a floating rate. You have a question, Judge Elrod? Sorry, I don't understand that to distinguish PINGO. So we're talking about PINGO. And in that case, I guess the original to issue discount there didn't account for the time value of money. But why does that matter? My point is that once you get away from the paradigm that the House and Senate reports describe, which is that the borrower borrows $90 and promises to pay back $100 in cash, what PINGO said in dictum was you can't disguise interest that way. There's no other way to describe the $10 but interest. But in that case where you were considering something a step away, which was the exchange of one note for another, the court held that was not the economic equivalent of interest. Our case takes that step even further by saying that we're going to discount the future amount of principal, which will always be a mitigant in favor of the borrower. So a thing that discounts principal to the credit of the borrower can't be the equivalent of interest. Now, how did this come about? It just seems to me that the make whole can't be, you say that it can't be interest because it basically decreases over time, while interest normally increases over time. But that's just as future unmatured interest. And so I don't understand why that that's the demarcation between whether it's interest or not. Because your honor, there are two things that work in the formula. One is a comparison of the contract interest rate with the way the market has moved at the time of prepayment, which may or may not result in some damage to the lender. And it's a debit against, in effect, the borrower's account. But the other thing that the formula does is it considers the difference between principal repaid tomorrow and principal paid today, which is always a mitigant in the borrower's favor. And sometimes, as Mr. Robbins' brief at 40 illustrates, results in nothing being due. If nothing is due, it can't be the equivalent of This is what you have held at least three times, by my count, in ACHI, in CCPOR, and once again, in Parker Plaza. In all of those cases, you said that a make whole premium was not interest. That's why it wasn't subject to a usury statute. Now, the Bankruptcy Code doesn't define interest in some bespoke way. It picks up state laws' definitions of interest. So you wouldn't be able to decide this case, as the appellants ask, without reversing your prior three decisions. Well, each of those cases specifically say that there's no economic equivalent. It's not the economic equivalent of unmatured interest. And I don't think anyone's disputing that those cases were rightly decided. But it just begs the question of whether the particular agreement in this case calls for the payment of unmatured interest, right? I mean, we have to look at those. We have to determine whether it's the economic equivalent of unmatured interest. And if it is, it's disallowed. And so those cases interpret agreements and technical differences and economic differences than they bring in in this case. If I may, Your Honor, though, those cases present formulae that are actually much closer to interest than ours. They had fixed interest rates that would be payable if, at least ACHI did, if there was a prepayment within a year. And the formula says you must always give the borrower credit for the economic advantage to the lender of the principal coming in early, which makes it much closer to a real measure of damage than the formulae in those cases. The thing I don't understand is that the principal didn't come in early. So I mean, I understand the bankruptcy court's explanation about the prepayment and the provision that could have triggered the make-all agreement. But you didn't. And I understand how the lender could be injured, because you get $100 million in cash today. You didn't want the $100 million. You wanted it in the market to get your income. That's not what happens. We can get your $100 million. Right. But that was a benefit to the borrower. The fact that we didn't get it was a benefit to the borrower, because the borrower in the formula got credit as though they had paid it. And the only available compensation for that is what Judge Isker gave in the form of interest. If you think about the comparison of a rental case, supposing a commercial tenant breaches a long-term lease early, the landlord no longer has a tenant. If he has a liquidated damage clause, of course, it's going to advert to the current rental market. And of course, it's going to consider what the rent rate was under the contract to establish whether there's any damage. But we no longer a tenancy. I think when you come right down to it, the central question in this case, and I wonder if this gets back to Judge Elrod's question, we're an unimpaired class. So there's a narrow way to decide this case, which is to limit its reach to unimpaired classes. And the question becomes, if you shift almost $400 million of contractual value from creditors to shareholders, can you really say that the equitable rights of the creditors have not been altered, not even by a micron, which is what the statute requires? You could say here, because we an unimpaired case, that the equitable solution is simply to look to the contract. That treats everyone according to what their expectations were. I wanted to briefly touch on the double counting point. I don't read our opponents to contend, and they couldn't possibly contend, that the make whole provision here is unenforceable as a penalty under state law. It's a New York contract. The highest court in New York has said that triggers based on acceleration do not create penalties in the JMD holding case. Their claim seems to be limited, which is they say there's some aspect of the formula that considers interest that would have accrued during the period before they actually paid. And some piece of that, they say, the difference between so-called T plus 50 and the contract rate is double counting. But the point is, as Judge Isger said, because that sum that was owed on the petition date wasn't paid, the only way to compensate for that is through the interest. I did want to add one thing to what my friend Mr. Robbins said about the solvent debtor exception. He touched on the Minerva Surgical case. I urge the court to consider that. I count eight votes in those opinions for our position. You had a broad statutory scheme, the Patent Act. You had a judicially created  broadly of the Patent Act in 1954 without any change in the provision that was accepted to and without any comment about the exception. The majority holds that the judicially created exception survives. And Justice Barrett, for three of the dissenters, agree with that concept. Their point of departure is that they don't think the exception was settled in that case. Nobody doubts that the solvent debtor exception was settled under the Act. So that's eight votes for the basic proposition that, as Mr. Robbins said, the soil carries with it. And as he pointed out, we have all of this jurisprudence in the bankruptcy context that looks for that clear statement to discard the principle. And here, when you bring that to the point of an unimpaired predator who's deprived of the ability to go and see a judge about a fairness hearing, I think it underscores the conclusion that we would draw. One, two quick points as my time dwindles. Look to 11-24-2. It sits in pair with 11-24-1. 11-24-1 is a cash out. 24-2 is reinstatement of the obligation. Nobody doubts that if you reinstate the obligation, you have to pay all the contractual elements of it. Why would one be read differently? And that would take you, at least on the equitable hook that remains to us after the first decision, to the contract rate in this case. In 12 seconds, I will just mention one more thing with regard to what the legal rate means. When Congress wants the federal judgment rate, it writes 1961. We put that in our brief every case, every statute we could find, and they haven't found one anywhere in which Congress has used legal rate for the federal judgment rate. Thank you all very much. Thank you, Mr. Bullitt. We have your argument. Mr. Clement, you save time for rebuttal. Thank you, Your Honors. Just three points in rebuttal. First, it's simply not textually true that Section 502b2 is simply a recodification of Section 63 of the Bankruptcy Act. If you look at the text, the text is quite different. I think it's quite different in a material way. It's one thing when a statute says the following is recoverable. It's one thing for judges, as part of their judge-making equitable interpretations, to say, oh, and in a narrow set of cases, here's one more thing that's recoverable. It's quite different to take a statute that says the following are not allowable claims, unmatured interest, full stop. To create a judicial exception of that is to just counteract the basic decision that Congress made. Congress has passed many provisions, at least a couple provisions in the code, that distinguish between solvent and insolvent debtors. If they wanted to the text of Section 63 just doesn't support the idea this is a mere recodification. I think it's telling that my friend on the other side, the closest he can come is language in Sub 5 of Section 63, but Sub 5 is not even applicable here. That's the subsection for provable debts reduced to judgment after the filing of the petition. The sub that's applicable here is Subsection 1, a fixed liability as evidenced by a judgment or an instrument in writing, and that provision is entirely permissive. It doesn't say you can't get unmatured interest. It simply says you get matured interest. That difference, I believe, is absolutely critical. One other distinction in the Bankruptcy Act that I think just bears mentioning is the Johnson case of this circuit from 1911 that my friend relies on. That predated the 1938 amendments to the Bankruptcy Act, and those are the amendments that allowed for the possibility of bad faith dismissal. At the point of the Johnson decision in 1911, there was no power in the Bankruptcy Court to dismiss a bad faith filing. Now that that's in the code, we're not even really talking about a solvent debtor exception anymore. What we're largely talking about is this relatively narrow set of cases where there was a good faith filing in bankruptcy, in this case, because we were insolvent at the time of that filing, and then commodity prices changed. So by the time of the plan, we're solving. That's a very narrow set of circumstances, and I think for the abusive cases, the power that exists in the code to dismiss bad faith filings addresses most of the inequitable circumstances. The second point I wanted to make in rebuttal is the principal argument I hear the other side making is that the make whole can't be unmatured interest or the economic equivalent of unmatured interest because there's a possibility in some scenarios it could be zero or it's contingent. I would submit that neither of those possibilities reduces the possibility that something could be unmatured interest. If you had a simple make whole that simply said, you get the amount of future unmatured interest minus 100, it would be theoretically possible for the future amount to be less than 100, and so you get zero. That wouldn't make the amounts that you can recover anything other than the economic equivalent of unmatured interest. Similarly, you could have a provision, at least in theory, I don't think anyone would write it this way, but that you get the unmatured interest except then you spin a wheel and one of the 10 outcomes on the wheel is that you get out of having to pay at all. So it's contingent. You have a 1 in 10 chance of paying zero. It's still the economic equivalent of unmatured interest. Adding these little bells and whistles doesn't change its fundamental essence and it's fundamentally unallowable under the code. The last point I'd like to make in rebuttal is just the notion that you can somehow get to the same result based on just some loose notion of equitable rights I think is fundamentally wrong. I mean it's a very odd notion of equitable that what you get under equity is your contractual rights. I mean contractual rights are generally the antithesis of equity. They're your legal rights and here there's two things that make it anomalous. One, the contractual right is expressly disallowed by 502b2 and second, they're not even getting their contractual right outside of bankruptcy. Could that be used the opposite way? That, gee, usually equity is unmoored and we're skeptical of it but here, by golly, the contract is what would have given this and if you look at this from a thousand foot view, this seems unfair at a fundamental level. What do you do with that argument? I do two things with your honor. First of all, equity may be a little looser than law but it's not completely unmoored and sort of the first rule of equity is you only go to equity if you don't have adequate rights at law and if the reason you don't have adequate rights at law is because there's a federal statute that says you don't get your rights at law under the contract, I think equity has exhausted itself. But the second thing and the last thing I will say is the real equitable result here is to treat the impaired class the same way as the unimpaired class, which is to give them the legal rate of interest, which is the federal judgment rate of interest. My friends on the other side have already gotten that. They've already been paid out based on the legal rate. So this whole fight is whether they get this additional substantial additional amount of interest payments under the contract. There's nothing particularly equitable about getting that when they get in the same interest rate that all the other classes would get. Thank you, your honors. Thank you. This case is submitted and we appreciate the argument of all council here today. Thank you.